PEOPLE v HACK

Docket No. 171030. Submitted March 13, 1996, at Grand Rapids. Decided October 8, 1996, at 9:15 A.M. Leave to appeal sought.

Christopher M. Hack was convicted by a jury in the Calhoun Circuit Court, Conrad J. Sindt, J., of four counts of first-degree criminal sexual conduct and two counts of child sexually abusive activity and was sentenced to concurrent terms of imprisonment of eighteen to thirty years for the criminal sexual conduct convictions and seven to twenty years for the child sexually abusive activity convictions. The defendant, along with three other minors and one adult, had made a three-year-old girl perform fellatio on a one-year-old boy and had videotaped the children's sexual activity. The defendant appealed.

The Court of Appeals held:

1. The defendant is incorrect in claiming that he can be convicted of criminal sexual conduct only as an aider and abettor and that, because the children were under seven years of age and therefore incapable of committing any crime as a matter of law, he cannot be convicted as an aider or abettor when the principals are not criminally culpable for criminal sexual conduct. The defendant is guilty of criminal sexual conduct as a principal in that he used one child as the instrumentality by which sexual penetration of the other child was performed.

2. The defendant was properly convicted of child sexually abusive activity for videotaping the children's sexual activity under MCL 750.145c(2); MSA 28.342a(2), which makes it a felony to produce child sexually abusive material. Contrary to the defendant's contention, the statute does not require that there be an intent to also distribute the child sexually abusive material produced.

3. The defendant's conviction of two counts of child sexually abusive activity when there was only one videotape of the children does not violate his rights against double jeopardy. A person who induces a child to engage in child sexually abusive activities commits a felony. MCL 750.145c(2); MSA 28.342a. Because two children were involved in this case, the defendant properly was convicted of two counts of child sexually abusive activity.

4. The trial court did not err in refusing to instruct the jury about gross indecency and second-degree criminal sexual conduct as lesser offenses with respect to the first-degree criminal sexual conduct charges. Because the gross indecency statute and the first-degree criminal sexual conduct statute protect different societal interests, gross indecency has no inherent relationship to first-degree criminal sexual conduct such that a gross indecency instruction must be given when first-degree criminal sexual conduct is charged. In the absence of evidence of sexual contact for a sexual purpose (a necessary element of second-degree criminal sexual conduct), the trial court was not obligated to instruct the jury about second-degree criminal sexual conduct.

5. Contrary to the defendant's claim, a standard different from MRE 901 was not required for authenticating the videotape because the videotape was the basis for the convictions of child sexually abuse activity. The videotape was properly authenticated under MRE 901, and no other evidentiary rule barred its admission.

6. The trial court did not abuse its discretion in denying a change of venue, which was sought on the basis of pretrial publicity. The jurors who stated that they had seen some of the publicity also stated that they could hear the case impartially on the basis of the facts presented. The defendant failed to establish that the publicity was so extensive or biased against him that the jurors could not remain impartial.

7. The trial court did not err in denying the defendant's request for a waiver of jury trial, which request was made over the prosecutor's objection, inasmuch as the jury was not biased.

8. The trial court correctly scored Offense Variables 5 and 9 of the sentencing guidelines. Fifteen points under OV 5 were supported by evidence that the defendant moved the victims to a place or situation of greater danger, and ten points under OV 9 were supported by evidence indicating that the defendant was the leader in a multiple offender situation. The rest of the alleged scoring errors need not be reviewed because the rescoring of those variables would not result in a different recommended sentence.

R. D. GOTHAM, J., concurring, stated that the defendant was properly convicted as an accomplice without regard to whether the children, as principals, had the requisite mens rea, because under MCL 767.39; MSA 28.979 a person having the requisite mens rea who procures another to commit the act constituting an offense may be prosecuted, tried, convicted, and punished as if that person had directly committed the offense.

Affirmed.

NEFF, J., dissenting in part, stated that the convictions of first-degree criminal sexual conduct should be reversed and the case should be remanded for resentencing because the children, being less than seven years of age, were incapable of committing first-degree criminal sexual conduct or any other crime and the defendant therefore could not have aided or abetted the commission of first-degree criminal sexual conduct.

1. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — CHILDREN.

A person who makes a child younger than seven years sexually penetrate another child younger than seven years commits first-degree criminal sexual conduct as a principal in that the children are used as innocent instrumentalities to accomplish the prohibited sexual penetration (MCL 750.520b[1][a]; MSA 28.788[2][1][a]).

2. CRIMINAL LAW — CHILD SEXUALLY ABUSIVE ACTIVITY — PRODUCING CHILD SEXUALLY ABUSIVE MATERIAL.

A conviction of child sexually abusive activity for producing child sexually abusive material does not require proof of intent to distribute the child sexually abusive material produced (MCL 750.145c[2]; MSA 28.342a[2]).

3. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — GROSS INDECENCY.

The statutes prohibiting first-degree criminal sexual conduct and gross indecency protect distinct societal interests; gross indecency does not have an inherent relationship to first-degree criminal sexual conduct, and a jury instruction about gross indecency as a lesser offense is not required where first-degree criminal sexual conduct is charged (MCL 750.520b[1][a]; MSA 28.788[2][1][a]).

4. VENUE — CRIMINAL LAW — PRETRIAL PUBLICITY.

A defendant seeking a change of venue has the burden of either proving strong community feelings against the defendant and that the publicity is so extensive that jurors could not remain impartial when exposed to it or of proving that the jury was actually prejudiced or the atmosphere surrounding the trial was such as would create a probability of prejudice; the trial court's ruling on a motion for change of venue is reviewed for abuse of discretion.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jon R. Sahli*, Prosecuting Attorney, and *Michael L. Jaconette* and *Nancy Mullett*, Assistant Prosecuting Attorneys, for the people.

*Bellanca, Beattie & De Lisle, P.C.* (by *Frank D. Eaman* and *Lawrence J. Paolucci*), for the defendant on appeal.

Before: Sawyer, P.J., and Neff and R. D. Gotham,[*] JJ.

Sawyer, P.J. Defendant was convicted, following a jury trial, of four counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and two counts of child sexually abusive activity, MCL 750.145c(2); MSA 28.342a(2). He was sentenced to concurrent terms of eighteen to thirty years for each criminal sexual conduct conviction and seven to twenty years for each child sexually abusive activity conviction. He now appeals and we affirm.

Defendant first argues that he could not be convicted of criminal sexual conduct because of the age of the victims and the nature of the conduct. We disagree. Defendant's convictions arise out of the videotaping of a three-year-old female victim who was forced to perform fellatio on her one-year-old male cousin. Defendant was seventeen at the time of the offense and there were four other individuals involved, two aged sixteen, one aged fifteen, and one aged twenty.[1] Defendant argues that he could only be considered an aider and abettor to the two children, because they were the only ones engaged in sexual activity, and because they are under seven, neither could be a principal. Absent a guilty principal, defendant argues, he cannot be guilty as an aider and abettor.

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

[1] There was also another sixteen-year-old present at the time, but he was not charged.

The inherent flaw in defendant's argument is that one of the children, presumably the three-year-old girl, would have to be considered a principal and that defendant's guilt must arise, if at all, as an accessory to that principal. In fact, defendant is guilty as a principal. Under MCL 750.520b(1)(a); MSA 28.788 (2)(1)(a), a person is guilty of first-degree criminal sexual conduct if the person engages in sexual penetration with another person and the victim is under the age of thirteen. Defendant did so here, namely, by causing the three-year-old girl to perform fellatio on the one-year-old boy. Where a defendant uses another person to accomplish a crime on his behalf, he is guilty as a principal:

> If *D* coerces *X* to commit a theft by threatening *X*'s life, *X* will be acquitted of larceny on the ground of duress. Today, and according to common law principles, *D* may be convicted of larceny. *X* was *D*'s innocent instrumentality. Therefore, at common law, *D* was the principal in the first degree of the offense. Conceptually, *D's guilt is not founded on accomplice-liability principles*. Instead, *D* is *directly* liable for committing the crime through the instrumentality; *D*'s guilt is not derived from another culpable person. *X*'s acquittal, therefore, presents no bar to the conviction of the only culpable party. [Dressler, Understanding Criminal Law, 2d ed, § 30.06(B)(1), p 446.]

Likewise in the case at bar, defendant's culpability is direct, not derivative. His guilt is not dependent, as the dissent argues, on whether the minor child can be considered criminally culpable. Rather, each child is merely the instrumentality by which defendant was able to achieve a sexual penetration (fellatio).

Indeed, Professor Dressler gives a specific example involving rape:

Suppose that a culpable secondary party assists a primary party to commit a wrongful act, but the primary actor is acquitted because he lacked the requisite *mens rea*. For example, consider *Regina v Cogan and Leak* [(1976) 1 QB 217]. Leak convinced Cogan to have sexual intercourse with Leak's wife by falsely telling him that she would agree to the intercourse. In fact, Leak compelled his wife to submit to Cogan. Cogan was acquitted of rape on the basis of the *Morgan* [*Regina v Morgan*, (1976) AC 182; 2 All E R 347] principle that his unreasonable mistake of fact regarding the wife's consent negated the *mens rea* of the offense.

In light of Cogan's acquittal, was Leak guilty of rape? The court answered the question affirmatively, providing two alternative theories. First, since Leak caused Cogan to misunderstand the attendant circumstances, Cogan was Leak's innocent instrumentality. Thus, Leak was the principal in the first degree who used Cogan's "body as the instrument for the necessary physical act." [Dressler, *supra*, § 30.06(B)(3)(a), p 447.]

Again, this principle applies equally to the case at bar. Defendant is not guilty because he aided and abetted one child in committing a sexual penetration with the other, but as a principal for using one child as the instrumentality to perform a sexual penetration with the other. The fact that the children, due to their age, lack mens rea is of no moment to the case at hand.[2]

Defendant next argues that he could not be charged with the crime of child sexually abusive activity because he lacked the intent to produce and distribute the videotape as required by the statute. We disagree.

---

[2] We do not disagree with the dissent's position that a child under seven years of age is incapable of criminal culpability. See *Burhans v Witbeck*, 375 Mich 253, 255; 134 NW2d 225 (1965). Rather, unlike the dissent, we do not find it necessary for the victims here to be capable of criminal culpability as a predicate to defendant's own criminal culpability. That is, defendant is a principal, not an aider and abettor.

The statute under which defendant was convicted provides in pertinent part:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . is guilty of a felony. [MCL 750.145c(2); MSA 28.342a(2).]

In order to determine whether defendant's actions fit within this definition, we must determine the meaning of the word "produce" as used in the statute. Unless defined in the statute, every word or phrase therein should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1), *People v Lee*, 447 Mich 552, 557-558; 526 NW2d 882 (1994). Although the statute here is unambiguous, and thus does not require interpretation, it is nonetheless proper to consult dictionary definitions to ascertain the meaning of words used in the statute. *Id. The Random House College Dictionary, Revised Edition* (1984), p 1056, defines "produce" as "to bring into existence," or "to create."

Here, it is undisputed, indeed defendant admits, that a videotape of the children performing acts of a sexual nature was created. Accordingly, any argument that defendant did not "produce" child sexually abusive material is wholly without merit.

Further, such a holding is not contrary to the intent of the Legislature. We find no requirement within the statute that defendant must intend to distribute the material in order to be convicted of this crime. To the contrary, the Legislature enacted this statute, in part, to protect children. See *People v Ward*, 206 Mich App

38, 42-43; 520 NW2d 363 (1994). Thus, convictions for the mere production of this type of material fit well within the intent of the Legislature. Accordingly, we conclude that defendant was properly charged with these crimes.

Defendant next argues that his double jeopardy rights were violated with his two convictions for child sexually abusive activity when only one videotape of the two children existed. We disagree.

To determine what constitutes a single crime or offense under the statute, we must again examine legislative intent. *People v Wakeford*, 418 Mich 95, 107-108; 341 NW2d 68 (1983). The first place this Court searches to determine that intent is the specific language of the statute, and we will not speculate regarding probable intent when the statute is clear. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992).

The portion of the statute under which defendant was charged and convicted provides that a person commits a felony when, inter alia, he induces "a child" to engage in "child sexually abusive activities." MCL 750.145c(2); MSA 28.342a(2). We find this language to clearly provide that a felony has been committed when a person induces one child to perform prohibited acts. Because it is undisputed that two children were involved in this case, we conclude defendant was properly charged with and convicted of two counts of this crime.

This Court's opinion in *People v Smith*, 205 Mich App 69; 517 NW2d 255 (1994), aff'd 450 Mich 349; 537 NW2d 857 (1995), does not compel a different result. In *Smith*, this Court determined that the defendant could only be convicted once for multiple photo-

graphs taken of the same victim at one time. Here, however, we are dealing with multiple acts committed against two victims. Accordingly, this Court's opinion in *Smith* does not govern the outcome of this case.

We conclude that defendant's rights against double jeopardy were not violated.

Defendant next argues that the trial court erred in refusing to give requested instructions on the lesser offenses of gross indecency and criminal sexual conduct in the second degree. We disagree. Turning first to the issue of an instruction on gross indecency, gross indecency and criminal sexual conduct are cognate offenses inasmuch as they share some elements, but the lesser offense has additional elements not found in the greater offense. *People v Hendricks*, 446 Mich 435, 443; 521 NW2d 546 (1994). However, defendant is entitled to an instruction on gross indecency only if it has an "inherent relationship" to first-degree criminal sexual conduct. *Id.* at 444. This "inherent relationship" is established if there is a common purpose between the statutes that protect the same societal interest. *Id.* at 445.

We are not persuaded that there is an inherent relationship between gross indecency and criminal sexual conduct. While both obviously involve sex offenses, they protect different societal interests. The focus of the criminal sexual conduct statute is the prevention of sexual assaults. *Ward, supra* at 42. Gross indecency, on the other hand, punishes sexual conduct that society considers indecent and improper. See *People v Jones*, 75 Mich App 261, 272; 254 NW2d 863 (1977). Indeed, gross indecency does not require an assault, and may even occur between consenting par-

ticipants. See, e.g., *People v Lino*, 447 Mich 567; 527 NW2d 434 (1994). Because these statutes address different purposes, there is no inherent relationship between the two. Accordingly, the trial court properly declined to give an instruction regarding gross indecency.

Defendant also argues that he was entitled to an instruction on second-degree criminal sexual conduct, also a cognate lesser-included offense of first-degree criminal sexual conduct. However, there was no evidence presented of a sexual contact for a sexual purpose, a necessary element of second-degree criminal sexual conduct, but not first-degree criminal sexual conduct. Accordingly, the trial court was not obligated to give an instruction on second-degree criminal sexual conduct.

Defendant next argues that the trial court erred in admitting the videotape that forms the basis of the child sexually abusive activity convictions because an inadequate foundation to admit the evidence existed. We disagree.

We review a trial court's decision to admit or deny evidence for an abuse of discretion. *People v McMillan*, 213 Mich App 134, 137; 539 NW2d 553 (1995). Our Supreme Court has determined that whether the proper foundation has been laid to admit evidence must be determined in light of MRE 901. *People v Berkey*, 437 Mich 40, 50; 467 NW2d 6 (1991). That rule of evidence provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. [MRE 901(a).]

Although defendant recognizes that this rule generally applies to the authentication of evidence, he claims that because the videotape here formed the basis of his convictions of child sexually abusive activity, it was incumbent on the prosecutor to prove not merely that the videotape depicted what was claimed, but rather that what is depicted on the tape actually occurred on the date in question. In other words, defendant argues that different standards of authentication are required depending on the importance of the evidence.

An examination of the rules of evidence and case law reveals no support for defendant's position. First, nowhere in the language of MRE 901 can we discern a limitation to its applicability depending on the importance of the evidence. Further, in *Berkey, supra*, our Supreme Court held the rule applicable to the admission of audio tapes that made up the only demonstrative evidence to indicate that the defendant committed the crime. The evidence was obviously critical in obtaining a conviction against the defendant. Also, in *People v White*, 208 Mich App 126; 527 NW2d 34 (1994), this Court applied the rule to test the authenticity of the cocaine the defendant was accused of possessing. Like the videotape here, the cocaine in *White* formed the basis of the defendant's conviction. Accordingly, we reject defendant's assertion that a different rule of authenticity applies to the videotape.

Thus, we must determine whether the videotape was properly admitted under MRE 901. We must also determine whether some other evidentiary bar to the evidence exists. *Berkey, supra* at 53. On the basis of

the record below, we conclude that the tape was properly authenticated and admitted.

The mother of the female victim testified that she knew that defendant and his friends were videotaping on the day in question, that she watched the video twice on that day and at least once after it was repaired by the police, that she observed the tape being broken, and that she brought that tape to the authorities. She testified that she recognized various events on the tape that she observed during the day in question. She also stated that other than small differences in the two versions of the tape, they were essentially the same.

In addition, Chip Kinzler testified that he was present on the day the videotaping occurred, that he could identify portions of the videotape from his own personal knowledge, and that the video reflected events he saw on the day in question.

On the basis of this evidence, we conclude that the trial court did not abuse its discretion in finding the videotape to be properly authenticated as required by MRE 901.

We also conclude that no other evidentiary rule bars the admission of the videotape. We do not agree with defendant that his due process rights were violated because of an alleged ambiguity regarding whether one or two instances of child sexually abusive activity occurred. Contrary to defendant's argument in his appellate brief, his two convictions of child sexually abusive activity arose out of the fact that two victims existed, not out of the fact that two separate instances were alleged.[3] Accordingly, even if

---

[3] Defendant admitted at trial that at least one of the instances occurred.

the ambiguity existed, it would not have affected the
number of his convictions.

We next address defendant's argument that the trial
court erred in denying defendant's request for a
change of venue where prejudicial pretrial publicity
existed. We find no error in the trial court's ruling.

We review a trial court's determination whether to
grant a request for a change of venue for an abuse of
discretion. *People v Passeno*, 195 Mich App 91, 98; 489
NW2d 152 (1992). In order to justify a change of
venue, it is not enough for a defendant to merely
demonstrate that pretrial publicity existed. *Id.* Rather,
defendant has the burden of proving either (1) strong
community feelings against him and that the publicity
is so extensive that jurors could not remain impartial
when exposed to it or (2) that the jury was actually
prejudiced or the atmosphere surrounding the trial
was such as would create a probability of prejudice.
*Id.* Further, if a juror states that she has formed an
opinion from media coverage, but swears she can set
that opinion aside and try the case impartially, and
the trial court is satisfied, then the juror is competent
to try the case. *Id.* at 98-99.

Here, we find no error in the trial court's ruling.
First, all the jurors who stated that they had seen
some of the pretrial publicity also stated that they
could hear the case impartially on the basis of the
facts presented. Second, we conclude that defendant
failed to carry his burden that the pretrial publicity
was so extensive or biased against him that the jurors
could not remain impartial. See *People v Lee*, 212
Mich App 228, 253; 537 NW2d 233 (1995). We find fur-
ther support for this conclusion from the fact that
defendant's trial counsel indicated satisfaction with

the jury panel at the close of the jury selection proceedings.

Accordingly, we find that the trial court did not abuse its discretion in denying defendant's motion.

Defendant next argues that because of the pretrial publicity and the potential of a biased jury, the trial court also erred in failing to grant defendant's request for a waiver of jury trial over the prosecutor's objection. MCL 763.3(1); MSA 28.856(1); MCR 6.401. Because we have already concluded that defendant's jury was not biased, we find no error in the trial court's ruling.

Finally, we consider defendant's argument that the sentencing guidelines were erroneously scored. Defendant challenges the scoring of Offense Variables (OV) 2, 5, 9, and 13. The total score on the offense variables was eighty, which exceeds the fifty points necessary to achieve the highest offense severity level by thirty points. Thus, any corrections to the offense variable scoring must exceed thirty points for the corrections to be meaningful. That can be achieved only if we agree that OV 2 was misscored as well as either OV 5 or OV 9.[4]

We will uphold the trial court's scoring of the guidelines if there is evidence to support it. *People v Hernandez*, 443 Mich 1, 16; 503 NW2d 629 (1993). Because the scoring of OV 2 is an admittedly close question, we will first consider whether either OV 5 or OV 9 should be rescored. If neither need to be

---

[4] Whether OV 13 was correctly scored is immaterial. Reducing the scores of OV 5, OV 9, and OV 13 all to zero would not change the recommendations of the guidelines, nor would reducing OV 2 and OV 13 to zero. It is only by reducing both OV 2 and OV 5 to zero or by reducing both OV 2 and OV 9 to zero that the guidelines are affected.

rescored, then we need not consider OV 2. OV 5 was scored at fifteen points, which is appropriate under the guidelines' instructions where the victim "was moved to another place of greater danger or to a situation of greater danger, or was held captive significantly beyond that which was necessary to commit the offense." The trial court upheld this scoring on the basis of testimony that the children were moved to a different area of the house, a bedroom, and away from the girl's mother. The mother testified that she could not see into the bedroom and did know what was happening in the bedroom. The trial court could conclude from that testimony that the victims were in greater danger by being removed from the presence of the girl's mother. Accordingly, there was evidence to support the trial court's scoring of OV 5.

Ten points may be scored for OV 9 where the defendant is the leader in a multiple offender situation. Although this was clearly a multiple offender situation, defendant argues that the evidence did not clearly establish that he was the leader. In upholding the scoring on this variable, the trial court pointed to defendant's conduct and comments on the videotape of the events. Additionally, the evidence established that defendant brought the male victim into the bedroom before the first incident and both victims into the room before the second incident. There was also testimony that it was defendant who forced the female victim's head between the male victim's legs, as well as it being defendant who held both victims during a separate incident. It was also defendant who encouraged the children during each of the two episodes in question and it was defendant who called the others into the bedroom before the second episode.

In short, there was evidence to support the trial court's scoring on OV 9.

Because the scoring of OV 5 and OV 9 was justified, those scores, along with the uncontested scores for OV 6 and OV 7, yield fifty points, placing defendant at the highest offense severity level, Level IV. Accordingly, we need not consider whether OV 2 and OV 13 were correctly scored because it would not affect the recommendations of the guidelines. See *People v Johnson*, 202 Mich App 281, 290; 508 NW2d 509 (1993).

Affirmed.

R. D. Gotham, J. (*concurring*). While I agree with Judge Sawyer's analysis in the lead opinion, I also believe defendant's conviction as an accomplice can be justifiably affirmed for a somewhat different reason.

Authoritative case law analyzes accomplice culpability as derivative. That is, we envision a joint enterprise in which the main protagonist or real culprit is assisted in some fashion by an accomplice who either intends the crime or fulfills the scienter requirement with "guilty knowledge" of the principal's intent. See *People v Wilson*, 196 Mich App 604; 493 NW2d 471 (1992), and the cases cited therein.

This, however, is a case of first impression regarding whether our statute must be so restrictively interpreted where the main actor's tender age raises an issue about the very existence of a crime, as opposed to a legal defense to conviction.

In many contexts it is highly significant that a young child lacking mens rea cannot commit a crime,

as opposed to an older actor's lack of mens rea by virtue of legal insanity or other affirmative defense.

In this context, however, it is a classic distinction without a difference, because our accomplice statute literally requires no mens rea on the part of the "principal" actor.

MCL 767.39; MSA 28.979 reads:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

This statute speaks of the "act constituting the offense," not of the act *and mens rea* constituting the offense or crime. This statute makes culpable not only one who aids another, but also one who "procures" another to "commit the *act.*"

Neither this statute nor our common law has required that the main protagonist supply the mens rea for the crime. There is no reason to require it in the present context. According to the jury verdict, defendant not only procured the act by the children but also supplied all the mens rea necessary for criminal sexual conduct in this case. He was thus properly convicted as an accomplice.

One can easily conceive of how very innocent children could be procured and counseled to commit some very terrible criminal acts. Under our statute, the responsible adult can be prosecuted, tried, convicted, and punished "as if he had directly committed such offense."

Neff, J. *(concurring in part and dissenting in part)*. I respectfully dissent and would instead affirm in part, reverse in part, and remand for resentencing.

I

The facts in this case are particularly disturbing. Defendant, an eleventh grade student at the time of this crime, and a group of his friends, decided, as they often did, to skip school and get drunk. They gathered at the home of one of the members of the group. As part of their fun, defendant and his friends decided to videotape their day. During the day, defendant and his friends forced a three-year-old girl and a one-year-old boy, who had the misfortune of living in the house, to engage in various activities of a sexual nature while the older boys videotaped them. Although an attempt was made to tape over and destroy the videotape, the mother of one of the victims eventually brought it to the authorities. Although the tape itself was broken, the authorities were able to cut out small pieces of the tape and splice the remaining portions back together. Defendant's convictions arose out of his actions with respect to the children and out of the existence of the videotape.

II

Defendant's first argument on appeal is that his convictions of first-degree criminal sexual conduct must be reversed. Defendant was convicted on the theory that because the children were under thirteen, and sexual penetration occurred, he was guilty of first-degree criminal sexual conduct as an aider and abettor. Defendant argues, however, that because the children were too young to have committed any

crime, he cannot be found guilty as an aider and abettor. I reluctantly agree.

A

In order to be convicted as an aider and abettor of a crime, it is not necessary that the principal in the underlying crime be convicted. See *People v Mann*, 395 Mich 472, 478; 236 NW2d 509 (1975). To support such a conviction, however, it is imperative that, at a minimum, some underlying crime have been perpetrated. *Id.* Thus, in order to sustain defendant's convictions of first-degree criminal sexual conduct, it must be determined whether the children committed the crime of first-degree criminal sexual conduct when forced to engage in acts of a sexual nature with one another.

B

Our Supreme Court has held that children under seven years of age are "incapable of negligence and of intentional tort or crime." *Burhans v Witbeck*, 375 Mich 253, 255; 134 NW2d 225 (1965). The theory behind this holding rests on the belief that a child under seven years of age, in essence, lacks the capacity to form the requisite mens rea in order to commit a crime. See *Baker v Alt*, 374 Mich 492; 132 NW2d 614 (1965).

I emphasize that our Supreme Court held that a child under seven is incapable of committing a crime, rather than finding age to be a defense to a crime. Were age merely a defense, defendant's convictions could stand because a defense is personal to the offender and an aider and abettor is not entitled to assert the principal's defense. See, e.g., *Vaden v State*,

768 P2d 1102, 1106 (Alas, 1989). In other words, that the principal has a defense does not alter the fact that a crime was committed.

The term "incapable," however, is defined as "not having a necessary capacity or power of performance." *The Random House College Dictionary, Revised Edition* (1984), p 671. Thus, it must follow that when a child under seven years of age performs some deed that would otherwise be considered a crime, no crime has been committed because the child lacks the power or capacity to commit it.[1]

It follows that because the children could not commit the crime of first-degree criminal sexual conduct because of their ages, defendant's convictions as an aider and abettor of those crimes cannot stand and should be reversed. In all other respects, I concur in the majority opinion.

---

[1] Another panel of this Court reached the same conclusion, albeit in dicta, in the recent case of *In re Hildebrant*, 216 Mich App 384, 387-388; 548 NW2d 715 (1996).