*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEANGELO TERRELL DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 18, 2023

No. 350057
Wayne Circuit Court
LC No. 18-006692-01-FC

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for first-degree murder, MCL 750.316, assault with intent to commit murder, MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of life imprisonment without parole for the murder conviction, 30 to 40 years' imprisonment for the assault with intent to commit murder conviction, and 1 to 5 years' imprisonment for the felon-in-possession conviction to be served consecutively to his two-year sentences for the felony-firearm convictions. We affirm.

## I. BACKGROUND

The case arises from the fatal shooting of Jovan Flynn (the victim). On Memorial Day in 2018, the victim drove his mother's silver Chevrolet Tahoe to the Citgo gasoline station on the corner of Schoolcraft and Greenfield Roads in Detroit to purchase an item for a later barbeque. The victim went into the convenience store while his long-time friend Bobby Gray, Jr. remained in the Tahoe.

Defendant, who lived nearby, drove his mother's black Chevrolet Equinox to the gas station with three passengers. Gray noticed defendant because he was driving aggressively. After defendant backed into a parking spot in front of the Citgo and across from the Tahoe, he and one

-1-

of his passengers got out of the Equinox and went into the convenience store.[1] Gray observed their demeanor and opined that they were "high, drunk, drug[ged]."

A security camera captured defendant entering the convenience store at 4:05:08 p.m. It also showed the victim exiting the store at 4:05:15 p.m. and returning to his Tahoe. The victim was visibly upset and Gray inquired about what was upsetting him. The victim told Gray:

> [M]an, these n***ers in the gas station are on tip [meaning they had a problem or an issue]. I don't know what they [are] on. What they lookin[g] for. What they [sic] problem is. I had a stare down with them and some words.

Gray encouraged the victim to move forward with their plans for the day. At 4:06:03 p.m., the video captured defendant standing in between the Equinox's opened door and looking at the Tahoe. According to Gray, as the victim's Tahoe passed defendant's Equinox on the way out, the victim and defendant locked eyes and the victim blurted out, "[W]hatever[;] it is what it is." The video also showed defendant pointing toward the Tahoe.

At 4:06:15 p.m., the Tahoe left the Citgo parking lot, turned left onto Schoolcraft Road, and stopped for a red light. In the interim, defendant entered his vehicle, but then returned to the Citgo store, opening the door and retrieving his passenger. Thirty-five seconds later, at 4:06:50 p.m., the Equinox left the Citgo.

The Tahoe turned right onto Greenfield Road and proceeded left onto Grand River Avenue. The victim then informed Gray that "they were being followed by the guys from the gas station." Gray did not see the Equinox when he looked in the rearview mirror; however, when he looked in his passenger-side mirror, he saw the speeding black Equinox approaching.

The victim slowed for a red light. Gray then heard a gunshot and a bullet crashed through the Tahoe's third-row rear passenger-side window from the direction of the Equinox. Gray quickly ducked down. More gunshots—five or six—followed into the open window on the Tahoe's passenger-side. The victim fell over onto Gray after the second shot. The Tahoe continued moving because the victim's weight was on the gas pedal. Gray grabbed the steering wheel and crashed the Tahoe into the wall of a nearby business at 4:08:20 p.m.[2]

By the time an ambulance arrived, the victim was dead. An autopsy concluded that the victim died from gunshot wounds to his right neck and right chest.

Investigating police located five shell casings on Grand River Avenue. Four casings were in decent shape and were .9-millimeter Luger caliber; the fifth casing was a mangled .45 auto

---

[1] This was the second time defendant had been in the store with one of his passengers.

[2] This was captured by another security camera. The distance from the Citgo gas station to the crash site was less than a mile, and, at 4:08:43 p.m., another driver called 911 to report a shooting involving a black Equinox and a gray Denali truck on Grand River Avenue with a person in the gray Denali being hit.

caliber. A forensic firearm and tool mark expert testified that all four .9-millimeter shell casings were fired from the same weapon. This was also true of the five fired metal jacketed bullets and bullet jackets the police recovered from the victim's Tahoe. Those bullets and jackets were from a .9-millimeter, .38-caliber, or .357 caliber class. By the time police searched defendant's car and the house he lived in ten or more hours after the shooting, they did not find a gun. Without it, the expert could not determine whether the shell casings and bullets were fired from the same weapon.

Additionally, Crystal Massey, who had a professional relationship with defendant, and had interacted with him approximately five to seven times since October 2018,[3] identified defendant from still photographs taken from the surveillance video footage as the driver of the Equinox due to his "distinct smile." Another police detective also testified that defendant's cell phone was active in the sector of the gas station and the location where the shooting occurred on the basis of its data.

During closing argument, defense counsel contended that the evidence did not establish that defendant was even present for the shooting, and, instead, defendant had returned to his nearby home. Moreover, defendant had no motive to commit the crime. And, even if the jury somehow concluded that defendant was at the scene of the shooting, he was merely present in the vehicle. It was further argued that defendant was not an aider or abettor because he did not intend the commission of the crimes or possess the firearm that killed the victim as evidenced by the later unsuccessful searches for the weapon.

After the jury found defendant guilty as charged, he moved for a *Ginther*[4] hearing and a new trial due to ineffective assistance of counsel. Defendant claimed that trial counsel failed to object to Massey's identification of defendant, the admission of the video footage, and defendant's criminal history being provided to the jury. Defendant also alleged that trial counsel failed to properly cross-examine the witnesses and failed to "argue key points in the case which would have led to an acquittal."

In response, the prosecution asserted that defendant was not entitled to an evidentiary hearing to develop his claims for ineffective assistance of counsel because defendant failed to demonstrate that any further factual development of the record would advance his claims. And, in any event, defendant had not satisfied his dual burden of establishing ineffective assistance of counsel under *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The trial court held a hearing on defendant's motion and subsequently denied it in a written opinion. The court determined that defendant failed to rebut the presumption that his trial counsel was effective. Counsel's decisions were tactical and defendant failed to demonstrate that trial counsel's performance was deficient. Nor did defendant demonstrate that there was a reasonable probability that the result of his trial would have been different but for trial counsel's alleged failings. The trial court also rejected defendant's claim that he was entitled to an evidentiary hearing because defendant had not shown that further factual development of the record was

---

[3] Unbeknownst to defendant's jury, Massey was defendant's parole officer.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

necessary to advance his claims. On reconsideration, the court agreed that it erred on a procedural ground in resolving defendant's motion, but reached the same result.

## II. STANDARD OF REVIEW

"[A] trial court's decision whether to hold an evidentiary hearing is reviewed for an abuse of discretion." *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). We also review for an abuse of discretion "the trial court's decision to deny defendant's motion for a new trial." *People v Schrauben*, 314 Mich App 181, 187; 886 NW2d 173 (2016). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. Because a *Ginther* hearing was not held, our "review is limited to errors apparent on the record." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Moreover, "[t]he questions presented by a claim of ineffective assistance of counsel are mixed questions of law and fact; findings of fact by the lower court are reviewed for clear error, and questions of constitutional law are reviewed de novo." *People v Aspy*, 292 Mich App 36, 45; 808 NW2d 569 (2011). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014) (quotation marks and citation omitted).

## III. ANALYSIS

Defendant argues the trial court erred when it denied his motion for a *Ginther* hearing because he set forth additional facts that required development of the record on the issue of whether counsel was ineffective. We disagree.

A trial court's decision to deny a *Ginther* hearing is not an abuse of discretion when a "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). "Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189-190. To prevail on a claim of ineffective assistance of counsel, defendant must satisfy *Strickland*'s two-part test. See *People v Trakhtenberg*, 493 Mich 38, 51-52; 826 NW2d 136 (2012). Defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. at 51.

"Effective assistance of counsel is presumed, and . . . defendant bears [the] heavy burden of proving otherwise." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (quotation marks and citation omitted). "[D]efendant must also overcome a strong presumption that his counsel's decisions were the result of sound trial strategy." *Id*. "[D]ecisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Finally, "[c]ounsel is not ineffective for failing to make a futile objection." See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## A. FAILURE TO OBJECT TO SECURITY CAMERA VIDEO FOOTAGE

Defendant argues his counsel was ineffective for failing to object to the admission of the video surveillance footage. Defendant explains that the video, which was missing slightly over three minutes of footage, "showed the video had been tampered with" and "counsel should have moved to suppress [it] because [the] purported 'glitch' rendered it unreliable." Defendant also alleges that counsel's failures deprived defendant of a substantial defense because the glitch allowed the prosecution to present "a false narrative of some sort of interaction between" the victim and defendant that never occurred. We disagree.

During trial, Detroit Police Department Detective Antonio Carlisi testified that he compiled the video played for the jury at trial by combining footage from multiple surveillance cameras at the Citgo and other businesses along the route driven by the victim. Detective Carlisi explained that the footage from Citgo's front-angle camera, which was part of Project Green Light,[5] was missing approximately three minutes. More specifically, a technical "glitch" caused the recording to jump from 3:59:32 to 4:02:28 p.m. Even so, footage from a separate Citgo side-angle security camera was uninterrupted. In other words, the three minutes absent from the front-angle camera was captured by the side-angle camera, albeit not in color or in high definition. The side-angle camera footage showed that the Equinox initially pulled into the Citgo parking lot at 3:59:43 p.m. as the victim and Gray were seated inside the Tahoe. This was the first time defendant and his passengers were at the Citgo. And although the victim's Tahoe was in the parking lot, no encounter occurred. Instead, the side-angle footage showed the victim walking toward the convenience store as defendant and his companions were in the process of leaving. Once the victim entered the store, the Equinox left before returning about two- and one-half minutes later. At that point, the victim was already inside the store and the interaction that the victim reported to Gray occurred when the victim was leaving the store and defendant was entering it.

Outside of defendant's conclusory assertion of tampering with the front-angle camera, defendant offers nothing to show that the video with the glitch was intentionally altered. Nor does defendant cite any authority that the video footage would have been inadmissible due to this technical glitch when it otherwise accurately captured what occurred. See *People v Hack*, 219 Mich App 299, 308-310; 556 NW2d 187 (1996). Therefore, defendant has not carried his burden of showing that trial counsel performed deficiently by failing to object to the front-angle video being admitted as evidence during trial or by failing to move for its suppression. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]"); *Thomas*, 260 Mich App at 457 ("Counsel is not ineffective for failing to make a futile objection."). Nor has defendant shown that there was a reasonable probability the outcome of trial would have been different had counsel objected to the front-angle video footage given that the separate side-angle camera captured what occurred when the front-angle camera faltered. Furthermore, the prosecution never misrepresented that an encounter between the victim and defendant occurred during the "glitch;" instead, the

---

[5] The city and business owners agree to have video surveillance cameras that have real-time connection that the city and police can view.

prosecution maintained that the encounter between the victim and defendant occurred when the victim exited and defendant entered the Citgo store.

Defendant further argues counsel was ineffective for failing to "obtain pertinent video surveillance from inside the gas station." Again, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *Hoag*, 460 Mich at 6. In this case, defendant recognized in his affidavit that Detective Carlisi testified that he recovered camera footage from inside the Citgo. The record also reflected that defendant and counsel signed pretrial orders declaring: "[t]he Prosecutor and Defense Counsel represent that all pretrial motions and discovery have been completed . . . ." During a pretrial hearing, defense counsel told the court that the parties were "in agreement that there's no video recording of a confrontation inside the store" and that he saw no interaction on the video. Consequently, defendant failed to demonstrate that trial counsel performed deficiently by not introducing into evidence the in-store video footage.[6] *Id*.

### B. FAILURE TO OBJECT AND TO MOVE FOR A MISTRIAL

Defendant argues that counsel was ineffective for failing to object and request a mistrial when the trial court incorrectly informed the jury about defendant's criminal history. More specifically, during jury selection, the trial court read the Information pertaining to the felon-in-possession charge, stating that defendant "did possess or transport a firearm when ineligible to do so because he had been convicted of murder -- because he had been convicted of a felony . . . ." Although the trial court did state that defendant had been convicted of murder, it immediately amended its statement to "convicted of a felony." The trial court further instructed the jury that the Information was "not evidence." And, during trial, the parties stipulated that defendant "had been previously convicted of a specified felony" and the trial court instructed the jury to base its decision on properly admitted evidence. "Jurors are presumed to follow their instructions[.]" *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted).

Because the trial court swiftly corrected its error, we conclude that defense counsel was not ineffective for failing to object. Indeed, an objection by counsel would have resulted in the same outcome—the court would have corrected the word "murder" to "felony." Additionally, an objection from counsel may have further drawn the jury's attention to the word "murder," and therefore, it may have been counsel's strategy to remain silent so as to not draw additional attention to the court's error, especially considering the court's own timely correction and instruction. See *Unger*, 278 Mich App at 242 ("declining to raise objections . . . can often be consistent with sound

---

[6] To the extent defendant suggests counsel was ineffective for failing to present the in-store video, this argument was not included in defendant's statement of questions presented, and, therefore, is unpreserved. MCR 7.212(C)(5). In any event, this Court presumes "decisions regarding what evidence to present . . . [are] matters of trial strategy." *Putman*, 309 Mich App at 248. Defendant has not rebutted this presumption, and, given the evidence presented, defendant has not shown that there is a reasonable probability that presenting the in-station videotape would have resulted in a different outcome at trial.

trial strategy"). In any event, defendant has not shown that there was a reasonable probability that the outcome of the trial would have been different if counsel had objected or moved for a mistrial in light of the court's curative actions and instructions and the evidence presented.

## C. FAILURE TO CROSS-EXAMINE AND OBJECT TO IDENTIFICATION TESTIMONY

Defendant contends counsel was ineffective for failing to cross-examine Massey. In his affidavit, defendant stated that he asked trial counsel to cross-examine "the prosecution's witness," but counsel did not. On appeal, defendant asserts that his meetings with Massey only lasted for "a matter of minutes" and that counsel should have cross-examined Massey to establish "the brevity of their interaction" to challenge the reliability of her identification.

At the preliminary examination, Massey testified that she became defendant's parole agent in October 2017 and met with him monthly for a maximum of ten minutes. At trial, Massey testified that she had known defendant since October 2017, and interacted with him "[a]pproximately five to seven times." Massey identified defendant in the videotape and photographic stills therefrom due to his distinctive smile. While defense counsel did not cross-examine Massey, "decisions regarding . . . how to question witnesses are presumed to be matters of trial strategy." *Putman*, 309 Mich App at 248. And defendant has not shown that trial counsel's performance fell below an objective standard of reasonableness or that there was a reasonable probability the outcome of his trial would have been different had his counsel cross-examined Massey in light of the videotape and still photographic evidence presented at trial depicting defendant as the driver of the Equinox owned by his mother.

Defendant also argues that counsel was ineffective for failing to object to Massey's identification testimony. More specifically, defendant asserts that Massey's identification testimony "invaded the province of the jury."

A lay witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. And a lay witness's testimony identifying a witness via a photograph or video is admissible where there is "reason to believe that the witness is more likely to identify correctly the person than is the jury." *People v Fomby*, 300 Mich App 46, 52; 831 NW2d 887 (2013) (quotation marks and citation omitted). The record demonstrates that Massey's identification of defendant was admissible under MRE 701 because she repeatedly saw defendant over the course of several months during their professional relationship and there was reason to believe she was more likely to correctly identify defendant than the jurors. *Fomby*, 300 Mich App at 52. Thus, counsel was not ineffective for failing to make a futile objection. *Thomas*, 260 Mich App at 457. And, even if we had concluded counsel's performance had been deficient, defendant failed to demonstrate that he was prejudiced in light of Gray's testimony and the compelling video footage admitted during trial.

## D. FAILURE TO ARTICULATE A KEY POINT DURING CLOSING ARGUMENT

Defendant alleges that counsel was ineffective for failing to "argue the key points in the case which would have led to an acquittal." In his affidavit, defendant alleged his trial counsel

failed to specifically argue points regarding "motive" and defendant's placement at the scene of the crime. Moreover, counsel failed to assert "that the defendant never was in possession or never had a firearm discharged from his vehicle" consistent with the forensic analysis performed on the Equinox. On appeal, however, defendant raises only the claim that trial counsel failed to argue the evidence showing that he "was never in possession of a firearm and no firearm was fired from his Equinox, which is consistent with forensic analysis."[7]

The record does not support this claim. During closing argument, defense counsel stated: "[T]he analysis of the [Equinox] . . . was [that it was] nice and clean inside and there was no evidence of any crime found in it." Additionally, counsel observed: "[I]n that video you don't see anybody with their arm out the window shooting at the car driven by [the victim]. None of that's recorded here." Because defendant failed to establish the factual predicate for his claim, he is not entitled to relief. *Hoag*, 460 Mich at 6. To the extent that defendant argues trial counsel's remarks were "generic" and "never emphasiz[ed] the point," counsel's decisions regarding the evidence highlighted during closing argument are presumed to be a matter of trial strategy. *Putnam*, 309 Mich App at 248. In light of the arguments delineated above, defendant has not demonstrated that counsel's performance was deficient or that he was prejudiced. *Id*.

### E. FAILURE TO OBJECT THE AIDING-AND-ABETTING JURY INSTRUCTION

Defendant argues that counsel was ineffective for failing to object to the jury instruction on aiding and abetting solely as it relates to his felon-in-possession and felony-firearm charges. In

---

[7] For the sake of completeness, we address defendant's now-abandoned claims regarding counsel's closing argument as it pertained to defendant's lack of motive and lack of presence during the shooting.

After the prosecution submitted that motive had been established by evidence of the "stare down," defense counsel argued the only evidence of this was Gray's testimony that the victim told Gray "somebody was being on a tip in there," "[w]hatever that means." Defense counsel then argued despite this "street lingo," Gray "never [said] who it [was] that [the victim] ha[d] the beef with inside." And that "seven seconds [was] not enough time for all of that to occur." Counsel further reminded the jury that Massey identified defendant by referencing his distinct smile and questioned whether defendant was the one engaged in the stare down Gray described, adding: "Well, if a guy is smiling where is an intent to kill? Where is some big chip on his shoulder that he wants to end the life of another human being or put them in danger of losing their life? Commit an assault with the intent to murder? There's none of that."

Regarding defendant's presence at the scene of the crime, defense counsel argued that it was understandable that his phone records put defendant in the cell-phone servicing zone because he lived near the Citgo and the crash site. Counsel posited that if there were cameras at Greenfield and Grand River, they would have shown defendant continuing onto his home, and, in fact, defendant was checking his voice messages shortly after the shooting. Counsel remarked that it would "be equally reasonable to believe that a man who lives in that area . . . went to . . . where he lives and was there when this horrible tragedy occurred." And counsel asserted that the "most logical thing . . . is that he [was] back at [his home] by the time all of this [took] place."

his brief in support of his motion for a *Ginther* hearing, appellate counsel asserted "there can be no sound trial strategy" when failing to object because an "umbrella instruction" is insufficient, citing to *Rosemond v United States*, 572 US 65; 134 S Ct 1240; 188 L Ed 2d 248 (2014). In *Rosemond*, the United States Supreme Court held that to establish the federal crime of aiding and abetting the using or carrying of a firearm during and in relation to any crime of violence or drug trafficking crime under 18 USC 2 and 18 USC 924(c), the government bore the burden of proving "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Id*. at 67. This case, however, is rooted in Michigan's felony-firearm statute, MCL 750.227b, and our Supreme Court has held "aiding and abetting the commission of a felony-firearm is no different from aiding and abetting the commission of any other felony." *People v Moore*, 470 Mich 56, 69; 679 NW2d 41 (2004). Accordingly, counsel was not ineffective for failing to raise a futile objection when instructing the jury on aiding and abetting principles as to the felony-firearm charges in general. *Thomas*, 260 Mich App at 457.

On appeal, however, defendant cites to *United States v Gardner*, 488 F3d 700 (CA 6, 2007), a case that he failed to bring to the trial court's attention. The defendant in *Gardner* was convicted of aiding and abetting a felon in possession of a firearm under federal law, arising out of a reverse-buy scenario, where three codefendants, including Gardner, plotted to take the cocaine at gunpoint. *Id*. at 706, 708-709, 713. Gardner was the only defendant charged with being a felon-in-possession and the government offered both principal and aider-and-abettor theories of liability; ultimately, however, the verdict form reflected that the jury convicted Gardner as an aider and abettor. *Id*. at 709, 714. Recognizing a split among the federal circuit courts, the Sixth Circuit concluded that to be convicted as an aider-and-abettor of felon-in-possession under 18 USC 922(g), the prosecution was required to prove "that the aider and abettor knew or should have known that the principal . . . was a convicted felon." *Id*. at 714-715.

As a decision of an intermediate appellate court, *Gardner* is not binding on this Court, see *People v Frazier*, 478 Mich 231, 242 n 8; 733 NW2d 713 (2007), and, in fact, *Gardner* recognized that the circuit courts are divided on the question of whether an aider and abettor must know about his principal's status. In response, the prosecution relies on *People v Minch*, 493 Mich 87, 93-94; 825 NW2d 560 (2012), which reasoned that an agent of a felon-in-possession could aid and abet him in that crime. However, we need not resolve this issue because, assuming arguendo that counsel performed deficiently by failing to specifically object to the aiding-and-abetting instruction pertaining to the felon-in-possession charge and its accompanying felony-firearm charge, defendant has not established he was prejudiced. As defendant recognizes, there was no evidence that any of defendant's companions were prohibited from using a firearm because they had been convicted of a felony. Considering the trial court's aiding and abetting instructions, the jury must have concluded that defendant, the lone occupant of the vehicle stipulated to be a convicted felon, actually possessed the firearm or constructively possessed it.

F. CONCLUSION

In sum, defendant failed to meet his dual burden of establishing that trial counsel's performance fell below an objective standard of reasonableness and that there was a reasonable probability that, but for his counsel's deficient performance, the outcome of trial would have been different. Defendant also failed to offer proof or additional facts outside of the record to support

the necessity of an evidentiary hearing, and thus, the trial court did not abuse its discretion when it denied defendant's motion for a *Ginther* hearing.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michael J. Riordan