# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONYA LYNN MATHIS,

Defendant-Appellant.

UNPUBLISHED
January 14, 2016

No. 323821
Oakland Circuit Court
LC No. 2013-248089-FC

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right her jury convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), victim under 13 years of age, and two counts of second-degree criminal sexual conduct (CSC II), victim under 13 years of age, MCL 750.520c(1)(a). The trial court sentenced defendant to serve concurrent sentences of 225 months to 99 years in prison for the CSC I conviction, and 6 to 15 years for each of the CSC II convictions. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

Defendant first argues that the language of the CSC I statute requires that the perpetrator sexually penetrate the victim, and does not include sexual penetration of the perpetrator by the victim, as occurred here. Accordingly, defendant argues that the evidence was insufficient to convict her of CSC I. This Court reviews de novo a challenge to the sufficiency of the evidence, as well as matters of statutory interpretation. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010); *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006).

Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The goal of statutory interpretation is to determine and apply the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The first step in determining legislative intent is to examine the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The meaning plainly expressed is presumed to be the intent of the Legislature. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007).

Defendant was convicted of CSC I pursuant to MCL 750.520b(1), which states in relevant part: "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person." MCL 750.520a(r) defines "sexual

-1-

penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."

Defendant argues that the words "with another person" and "another person's body" indicate that the perpetrator must penetrate another person. However, the statutory language indicates only that two persons must be involved. MCL 750.520b(1) requires that the perpetrator "engage[] in" sexual penetration. When a statute does not define a word, the Court may consult dictionary definitions. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). To engage means to "employ or involve oneself; to take part in; to embark on." *Black's Law Dictionary* (7th ed). Thus, the perpetrator must be a part of or involved in a sexual penetration, which could be accomplished by penetrating a victim or by having a victim penetrate the perpetrator. In *People v Hack*, 219 Mich App 299, 302-303; 556 NW2d 187 (1996), the Court found that the defendant committed sexual penetration "by causing the three-year-old girl to perform fellatio on the one-year-old boy" while the defendant videotaped the activity. In *Hack v Elo*, 38 F App'x 189, 193 (CA 6, 2002) the court affirmed that the statutory definition of sexual penetration unambiguously included acts of penetration that were by means "other than direct touching by the accused individual." This interpretation is supported by the statutory context in which the words are used. See *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

Here, complainant explained that he entered defendant's bedroom to find her without her clothes on and that defendant commanded him to approach and then arranged his fingers so as to extend his middle and pointer fingers from his fist. Defendant then told him to put his fingers in her vagina and that she moaned and moved until she told him to stop. This evidence established that defendant engaged in sexual penetration with complainant because she caused him to penetrate her with his fingers.

Next, defendant argues that expert testimony by Sarah Visker-Killips should not have been admitted because it was more prejudicial than probative. Defendant did not object to the testimony on this basis. Unpreserved evidentiary issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of defendant's innocence. *Id.* at 763.

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Unfair prejudice exists when there is a tendency that the evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence. *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) (citation omitted).

Visker-Killips testified that research established that the rate of false reporting of sexual abuse in cases where there is a custody dispute is quite low, less than four percent or even as low as one to two percent. She went on to say that it was difficult to determine if the complainant's allegations were false and that she could not say what any research demonstrated about false

reporting in circumstances where the custody dispute had occurred in the past. Even if this statistical evidence was potentially prejudicial and had limited probative value as defendant argues, the testimony was in response to testimony that defendant had elicited from Visker-Killips on cross-examination. That is, defendant had asked Visker-Killips whether she was aware of children being used as pawns in child custody cases to make false allegations of sexual abuse and whether, considering the history of custody issues and child protective services reports in this case, a child such as complainant could correctly recall abuse. On redirect examination the prosecutor then asked Visker-Killips about the research on false reporting of sexual abuse in custody disputes. Questioning that may not be appropriate on direct examination may be admitted after a defendant "open[s] the door to this line of questioning." *People v Beckley*, 434 Mich 691, 731-732; 456 NW2d 391 (1990). A defendant may place an issue in dispute during cross-examination, *People v Bates*, 91 Mich App 506, 510-511; 283 NW2d 785 (1979), and the "prosecution is entitled to contest fairly evidence presented by a defendant." *People v Reid*, 233 Mich App 457, 477; 592 NW2d 767 (1999) (citations omitted). Thus, no plain error occurred.

Next, defendant argues that the trial court abused its discretion in admitting testimony regarding the behavior of defendant's daughter because it was irrelevant and more prejudicial than probative. The contested evidence was testimony from the child's father describing how the child had acted out in various sexual ways. However, even if we agreed with defendant that the challenged evidence was improperly admitted, defendant has failed to establish that it is more probable than not that any such error was outcome determinative. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Complainant gave a graphic account of the sexual abuse he endured and defendant's daughter's testimony regarding defendant's inappropriate sexual behavior supported his account. Given this testimony, it is unlikely that the jury would have reached a different result if the testimony from defendant's daughter's father regarding the child's sexualized behavior had been excluded.

Next, defendant argues that the prosecutor committed misconduct during closing argument and improperly shifted the burden of proof to defendant. Claims of prosecutorial misconduct are reviewed de novo, on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial resulting in prejudice to defendant. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010); *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003).

The prosecutor made the following comments on the testimonies of complainant and defendant's daughter:

> [H]ow do you explain the very visceral, raw reaction that these two had when they came into court and talked about it? How do you explain that? How do you explain crying, throwing up? How do you explain [the daughter] who was crying, sitting here like this, didn't even want to look up? How do you explain their reaction about having to talk about this? How do you explain that? Now that -- we had some pretty good actors here. If that's the case these kids are phenomenal.

It is noted that the complainant took a break during his testimony so that he could vomit. Following defendant's closing argument, the prosecutor commented, "I was right, she couldn't explain it. I said I want to see how defense counsel explains the visceral reaction from

[complainant] throwing;" defendant interjected with an objection, arguing that the prosecutor's comments were shifting the burden of proof by suggesting that defendant had to prove something. The trial court overruled the objection. The prosecutor completed the argument, stating, "No explanation. No explanation for getting physically ill."

A prosecutor may not suggest in closing argument that a defendant must prove something or present a reasonable explanation for damaging evidence because this argument tends to shift the burden of proof. *Fyda*, 288 Mich App at 464. However, attacking the credibility of a theory advanced by a defendant does not shift the burden of proof. *McGhee*, 268 Mich App at 635. Here, defendant's primary defense was that the testimony of the witnesses was not credible and was motivated by anger with defendant. Defendant asserted as much in closing argument and the prosecutor responded by rhetorically asking the defense to reconcile the witnesses' demeanor and physical reactions with defendant's claim that they were providing false testimony. The prosecutor's comments were properly responsive to defendant's defense theory and did not suggest that defendant had to prove something or explain damaging evidence. In fact, both the prosecutor and defendant reminded the jury that the prosecution had to prove defendant's guilt. A prosecutor may comment on the weakness or improbability of the defendant's theory. *People v Fields*, 450 Mich 94, 116-117; 538 NW2d 356 (1995).

Defendant also argues that the prosecutor's comments improperly referred to her decision not to testify. A prosecutor may not comment on a defendant's failure to testify because such comments also tend to shift the burden of proof. *Abraham*, 256 Mich App at 273. Here, however, there was no demonstrable connection between the contested comments and defendant's choice not to testify. Further, the trial court instructed the jury that the prosecutor, not defendant, carried the burden of proof and that defendant had a right to not testify. Because the prosecutor's comments did not shift the burden of proof, defendant's claim of prosecutorial misconduct is without merit.

Next, defendant argues that the trial court erred in scoring offense variables (OVs) 10, 11, and 13. In *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 318329, issued October 22, 2015); slip op at 19, the Court stated:

> [G]iven the continued relevance of the scoring variables to the Michigan sentencing scheme, the standards of review traditionally applied to the trial court's scoring of the variables remain viable after [*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).]
>
>> [T]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citations omitted).]

A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. *People v Hornsby*, 251 Mich App

462, 468; 650 NW2d 700 (2002) (citations omitted).  A trial court's scoring decision for which there is any evidence in support will be upheld.  *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009).

**OV 10**

Defendant argues that the trial court erred in scoring OV 10, exploitation of a victim's vulnerability, at 15 points.  MCL 777.40(1).  OV 10 is scored at 15 points where predatory conduct, which is "preoffense conduct directed at a victim for the primary purpose of victimization," was involved.  MCL 777.40(1)(a); MCL 777.40(3)(a).  Defendant argues that there was no evidence of predatory behavior and that OV 10 should have been scored at 10 points for exploiting the victim's youth. See MCL 777.40(1)(b).  In *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), the Court stated that OV 10 is scored at 15 points when the responses to the following inquiries are true:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

Predatory conduct involves conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.'"  *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) (citation omitted).

Here, defendant engaged in conduct directed at complainant prior to the CSC I offense at issue.  She routinely took baths with complainant and taught him to unhook her bra.  She directed complainant to wash her breasts and groin area.  This behavior was a precursor to the CSC I offense because it eroded appropriate physical boundaries by encouraging mutual display of private areas as routine and practiced touching of private areas at defendant's direction. Complainant was susceptible to defendant's inappropriate direction because of his young age, his relationship to defendant, and his fear of physical abuse.  Gradually escalating "less intrusive and less highly sexualized forms of sexual touching" in order to "desensitiz[e] the victim to future sexual contact," or grooming, demonstrates an intent to victimize a person.  *Steele*, 283 Mich App at 491-492.  Further, waiting for an opportunity to be alone with a victim in an isolated location is sufficient to constitute predatory conduct.  *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003).  Here, defendant was isolated in her room and physically exposed when she commanded complainant to join her and assisted with the penetration.  Thus, there was ample evidence to support scoring OV 10 at 15 points for predatory conduct.

**OV 11**

The prosecution agrees with defendant that OV 11 was incorrectly scored at 50 points. OV 11 considers criminal sexual penetration and the trial court scored it at 50 points for two or more criminal sexual penetrations, MCL 777.41(1)(a), noting that complainant had said the touching occurred repeatedly. Under OV 11, the trial court scores all "the sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). For the sexual assault to arise out of the sentencing offense, the offenses must have a "connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). No points are scored for the penetration that constitutes the CSC I. MCL 777.41(2)(c). Complainant did not describe other instances of penetration that were connected to or were an effect of the sentencing offense that he described. And it was not demonstrated that other penetrations arose out of the sentencing offense. Thus, OV 11 should have been scored at zero points.

**OV 13**

OV 13 considers a continuing pattern of criminal behavior and was scored at 50 points because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Here, complainant testified that he did not remember how many times the abuse in the bedroom occurred, but that it was more than two times and less than 100 times between his ages of five and eight. A sentencing factor need only be proved by a preponderance of the evidence, *Steanhouse*, ___ Mich App at___, slip op at 19, and a trial court's scoring decision for which there is any evidence in support will be upheld. *Steele*, 283 Mich App at 490. A preponderance of the evidence supported the trial court's conclusion that defendant engaged in penetration with complainant at least three times over a five-year period; thus, OV 13 was properly scored at 50 points.

In summary, defendant's OV score of 125 should be reduced by 50 points because of the error in scoring OV 11. According to the sentencing grid for class A offenses, MCL 777.62, defendant's prior record variable level of 20 and her OV score of 75 result in a guideline sentence range of 108 to 180 months. Because her guideline range had been 135 to 225 months, defendant is entitled to resentencing.

Recently, the Michigan Supreme Court in *Lockridge*, 498 Mich at 383, held that Michigan's determinate sentencing scheme violated the *Apprendi* and *Alleyne* rule[1] because the

---

[1] In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne v United States*, ___ US ___, ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013), the Court found

sentences produced by the sentencing guidelines relied on "judge-found facts [that] are used to curtail judicial sentencing discretion by *compelling* an increase in the defendant's punishment." Thus, Michigan's sentencing scheme was in violation of the Sixth Amendment because "facts not admitted by the defendant or necessarily found by the jury verdict" increased a defendant's "mandatory minimum" sentence. *Id*. at 373-374. The Court held that the sentencing guidelines would therefore be advisory only, but would be "a highly relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391.[2] A sentencing court "must consult those Guidelines and take them into account when sentencing." *Id*., citing *US v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

Defendant argues that *Lockridge* should apply on remand only when a defendant has made a direct appeal that his sentence was constitutionally deficient based on *Alleyne*. However, the current state of the law is that Michigan's sentencing guidelines are advisory only and are "a highly relevant consideration in a trial court's exercise of sentencing discretion." *Lockridge*, 498 Mich at 391. The trial court would be bound to apply current law in resentencing defendant. However, defendant should be afforded the opportunity on remand to inform the sentencing court whether she still wishes to seek resentencing. The resentencing must comply with the principles set forth in *Lockridge*, particularly that the sentence must take into account the advisory guidelines and be reasonable.

Finally, defendant argues that the trial court erred in sentencing her to lifetime electronic monitoring because it violated the ex post facto clauses of the federal and Michigan Constitutions. The prosecution agrees, admitting that lifetime electronic monitoring was not a punishment for the crimes committed by defendant at the time she committed them. See *People v Earl*, 495 Mich 33, 37-39; 845 NW2d 721 (2014). We agree and conclude that the trial court erred by sentencing defendant to lifetime electronic monitoring.

Affirmed in part, reversed in part, and remanded to afford defendant an opportunity to seek resentencing, to vacate the sentence of lifetime electronic monitoring, and, if applicable, to correct the judgment of sentence to read six years, rather than six months, for the minimum sentence for the CSC II convictions. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id*., citing *Apprendi*, 530 US at 483 n 10, 490.

[2] The Court severed MCL 769.34(2), and substituted the word "may" for "shall" in the statute; it previously required that a minimum sentence for a felony "shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed."