PEOPLE v JOHNSON

Docket No. 141615. Submitted September 7, 1993, at Detroit. Decided
November 1, 1993, at 9:20 A.M. Leave to appeal sought.

James L. Johnson was convicted by a jury in the Detroit Record-
er's Court, Michael J. Talbot, J., of breaking and entering an
occupied dwelling with intent to commit larceny, two counts of
armed robbery, two counts of first-degree criminal sexual con-
duct, and possession of a firearm during the commission of a
felony. The defendant was sentenced to imprisonment of ten to
fifteen years for the breaking and entering conviction, thirty to
sixty years for each of the armed robbery convictions, 60 to 120
years for each of the criminal sexual conduct convictions, and
two years for the felony-firearm conviction. The defendant
appealed.

The Court of Appeals *held:*

1. The trial court did not err in denying the defendant's
pretrial motion for an evidentiary hearing concerning the
propriety of the photographic and corporeal lineups through
which one of the victims identified the defendant. An eviden-
tiary hearing is not required in every case in which an identifi-
cation procedure is challenged. Where a challenge is insuffi-
cient to raise a constitutional infirmity or where, as in this
case, the defendant fails to substantiate the allegations of
infirmity with factual support, no hearing is required.

2. The trial court did not err in denying the defendant's
motion to suppress evidence of a confession. The record does
not support the defendant's claim that the confession was
rendered involuntary by promises of leniency, threats against
his girl friend, and physical coercion.

3. There is sufficient evidence on the record to support the
trial court's assessment of points under the sentencing guide-
lines for criminal sexual conduct offense variables related to
bodily injury or terrorism, movement of the victim to another
place, multiple victims, and the defendant's role as leader in a
multiple-offender situation. Although the trial court abused its

REFERENCES
Am Jur 2d, Criminal Law §§ 418, 428.
See ALR Index under Criminal Law; Hearings.

discretion in assessing points under criminal sexual conduct variables related to exploitation of the victim's vulnerability and psychological injury, any error in that regard is harmless because recalculation would not result in shorter sentences.

4. The sentences for armed robbery do not violate the principle of proportionality inasmuch as they are presumptively proportionate because they are within the range recommended by the sentencing guidelines and the defendant did not rebut that presumption. The sentences for criminal sexual conduct, which exceeded the recommendation in the sentencing guidelines, are also proportionate in light of the aggravating factors cited by the trial court in departing from the guidelines.

Affirmed.

CRIMINAL LAW — IDENTIFICATION — EVIDENTIARY HEARINGS.
    An evidentiary hearing concerning a contested identification procedure is not required where the challenge is insufficient to raise a constitutional infirmity or where the defendant fails to substantiate the allegations of infirmity with factual support.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Mueckenheim & Mueckenheim, P.C.* (by *Robert C. Mueckenheim*), for the defendant on appeal.

Before: DOCTOROFF, C.J., and GRIBBS AND S. N. ANDREWS,* JJ.

DOCTOROFF, C.J. Defendant appeals as of right his jury convictions of breaking and entering with intent to commit larceny, MCL 750.110; MSA 28.305, two counts of armed robbery, MCL 750.529; MSA 28.797, two counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was

* Circuit judge, sitting on the Court of Appeals by assignment.

sentenced to imprisonment of ten to fifteen years for the breaking and entering conviction, thirty to sixty years for each of the armed robbery convictions, 60 to 120 years for each of the criminal sexual conduct convictions, and two years for the felony-firearm conviction. On appeal, defendant challenges the trial court's denial of his motion for a hearing to evaluate the admissibility of identification testimony, the voluntariness of statements given to the police, and his sentences for armed robbery and criminal sexual conduct. We affirm.

Defendant's convictions arise out of an incident in which he and a codefendant, Eugene Posey, broke into a home in Detroit in the early morning of November 21, 1991.[1] The victims testified that they were sleeping in their bedroom when they were awakened by defendant and codefendant shining a flashlight in their eyes and demanding that they turn over money and valuables. Both victims testified that defendant was armed and that he threatened to kill them if they did not comply with the demands of defendant and his codefendant. Thereafter, the men demanded that the male victim retrieve money from his wallet, which was in his pants in the bedroom. At some point, the victims were also ordered to surrender their wedding rings.

Defendant subsequently ordered the female victim out of bed at gunpoint and forced her to accompany him throughout the home to point out certain valuables. Defendant escorted the female victim downstairs, where she kept her purse. She

---

[1] This is one of four companion cases before this Court involving defendant and his codefendant wherein the two men broke into homes in the Detroit area. See *People v Posey,* unpublished opinion per curiam of the Court of Appeals, decided November 1, 1993 (Docket No. 141612); *People v Posey,* unpublished opinion per curiam of the Court of Appeals, decided November 1, 1993 (Docket No. 141614); *People v Johnson,* unpublished opinion per curiam of the Court of Appeals, decided November 1, (1993) (Docket No. 141613).

was then taken back upstairs and she went through certain valuables upstairs with defendant. Defendant then made sexual advances toward the victim. Defendant took the female victim back to the bedroom, ordered her to return to bed, and left the room. A short while later, defendant returned, ordered the victim to go with him, and, on two separate occasions, defendant penetrated the victim with his finger and his penis. Defendant and his codefendant then left the home, taking a number of valuables with them.

Shortly after the incident, the female victim identified defendant in a photo array consisting of five small photographs. The victim then identified defendant at a live lineup and in open court.[2] Before trial, defendant moved for a hearing to evaluate the admissibility of this identification testimony. The motion filed with the court indicated that the lineup was unduly suggestive, but did not contain any factual averments to support that allegation. Moreover, the brief in support of the motion failed to allege any factual support for the assertion.

At a subsequent hearing, the trial court pressed counsel for factual substantiation of the claim that the identification procedures were unduly suggestive. Counsel for the defendant was unable to substantiate the allegations beyond her assertion that the identification at the photo array was inconclusive, that the defendant was the only one matching the physical description given by the victim, and that defendant appeared in the lineup wearing the same clothes he was wearing on the night of the incident. The court again pressed

[2] Contrary to defendant's assertion on appeal, the victim did positively identify defendant during trial in response to questions from the prosecutor.

defense counsel to substantiate the allegations with facts and legal precedent concerning the physical differences and the manner in which defendant was presented at the lineup. When defense counsel could not, the court denied the motion for an evidentiary hearing, with the stipulation that defense counsel would be permitted to file a subsequent motion with factual support. Defense counsel made no such motion.

On appeal, defendant claims that the court erred in denying his motion for an evidentiary hearing to evaluate the identification procedures. Defendant suggests that *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), requires that a defendant be granted an evidentiary hearing whenever identification procedures are challenged. We disagree.

In support of defendant's assertion, he relies upon *People v Reynolds,* 93 Mich App 516; 286 NW2d 898 (1979), where this Court stated that a defendant is entitled to an evidentiary hearing when the admissibility of identification evidence is challenged on constitutional grounds. *Id.* at 519. While we agree that certain cases will require a hearing to determine the constitutional validity of identification procedures, we do not agree that all cases require the court to conduct such a hearing. Rather, where it is apparent to the court that the challenges are insufficient to raise a constitutional infirmity, or where the defendant fails to substantiate the allegations of infirmity with factual support, no hearing is required.

Our holding is supported by *Watkins v Sowders,* 449 US 341; 101 S Ct 654; 66 L Ed 2d 549 (1981), where the Supreme Court held that the Due Process Clause of the Fourteenth Amendment did not require a separate hearing to evaluate the admissi-

bility of identification evidence. *Id.* at 347.[3] The Court rejected the petitioners' claim that, like in the evaluation of confessions, a hearing is required to protect a defendant's due process rights. *Id.* In so doing, the Court stated that the reliability of identification evidence was primarily a question for the jury and that, unlike in cases involving involuntary confessions, no special policy considerations compelled a hearing out of the jury's presence. *Id.*

While we agree with the *Reynolds* Court that a hearing was required under the facts of that case, we decline to blindly follow that holding where there is a total absence of factual substantiation of the alleged improprieties. We find the instant case distinguishable from *Reynolds, supra,* because defendant does not allege that the photo array tainted the live lineup and because defendant was given the opportunity to challenge the identification on cross-examination.[4]

Defendant's assertion that he appeared at the lineup in the same clothes he wore when he committed the crimes does not automatically render the lineup impermissibly suggestive. See *People v Kurylczyk,* 443 Mich 289, 304-305, n 12; 505 NW2d 528 (1993) (GRIFFIN, J.); *People v Morton,* 77 Mich App 240, 244-245; 258 NW2d 193 (1977). This is particularly so where, as here, the victim testified that she was able to identify defendant by his facial features and had a substantial independent basis for the in-court identification. *Kurylczyk, supra* at 13 (relying on *People v Anderson,* 389 Mich 155; 205 NW2d 461 [1975]).

---

[3] Like the Court in *Watkins,* we are not faced with the question whether it was prudent for the trial court to deny the request for the hearing. *Id.* Rather, we are asked to determine whether it is error warranting reversal for a trial court to deny such a request.

[4] Defendant offers no support for the assertion that an inconclusive identification at the photographic lineup inherently taints the live lineup.

In the instant case, we believe that the trial court properly denied defendant's motion for an evidentiary hearing to evaluate the identification procedures. We do not believe that a defendant is entitled to an evidentiary hearing where the defendant fails to support the allegation of impropriety with factual support or where it is clear from the record that such a hearing would be futile in light of substantial evidence that there exists an independent basis for the identification. We acknowledge that certain situations will require an evidentiary hearing without full factual support (i.e., violations of the *Wade* right to counsel or other constitutional impropriety). However, this is not such a case.

Defendant next argues that the court improperly denied his motion to suppress statements given after his arrest.[5] Defendant claims that the statements were given as a result of promises of leniency, threats against his pregnant girl friend, and physical coercion. We disagree.

Voluntariness of a confession is a question of law for the trial court's determination. *People v Etheridge,* 196 Mich App 43, 57; 492 NW2d 490 (1992). In reviewing the trial court's determination of voluntariness, this Court examines the entire record and makes an independent determination of voluntariness using the factors articulated by our Supreme Court in *People v Cipriano,* 431 Mich 315; 429 NW2d 781 (1988), as a guide. Those factors include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and pro-

---

[5] We note that defendant raised the identical argument in a companion case. See *People v Johnson,* unpublished opinion per curiam of the Court of Appeals, decided November 1, 1993 (Docket No. 141613).

longed nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Id.* at 334.]

We defer to the trial court's superior ability to view the evidence and the demeanor of the witnesses and will not disturb the trial court's findings unless they are clearly erroneous. *Etheridge, supra* at 57.

In this case, after a lengthy *Walker*[6] hearing, the trial court commented extensively with regard to the serious concerns it had about the veracity of defendant's allegations of coercion and promises of leniency. Upon independent review of the entire record, we too are persuaded that the overwhelming evidence contradicted defendant's version of the events surrounding his statements and do not believe that the court's findings of fact were clearly erroneous. Accordingly, we affirm the trial court's order denying the motion to suppress the statements.

Defendant next challenges the scoring of offense variables 2, 5, 6, 7, 9, and 13 of the sentencing guidelines. Appellate review of guidelines calculations is very limited and this Court should not disturb the scoring where there is record evidence to support the scores. *People v Hernandez,* 443 Mich 1, 16; 503 NW2d 629 (1993); *People v Daniels,* 192 Mich App 658, 674; 482 NW2d 176 (1992).

[6] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

Defendant received twenty-five points for ov 2. Offense variable 2 is scored at twenty-five points where the victim incurs bodily injury or is subjected to terrorism. Under the circumstances of this case, the fact that defendant held a gun to the victim's neck, admonished her not to pull away, and forced her throughout the home at gunpoint supports the conclusion that the victim was terrorized.

Defendant received fifteen points for ov 5. Offense variable 5 is scored at fifteen points where the victim was moved to another place of greater danger or to a situation of greater danger. In this case, the fact that defendant forced the victim to accompany him from the bedroom, throughout the house and, eventually, to the third floor of the home is sufficient evidence to support the score.

Defendant received ten points for ov 6. Offense variable 6 is scored at ten points where there are two or more victims of the crime. The instructions for the variable state that each person who is placed in danger of injury or loss of life is to be counted as a victim. See Michigan Sentencing Guidelines (2d ed) at 44. In this case, defendant threatened to kill both victims if they failed to cooperate with his demands. In view of the threats made against the victims, there was sufficient evidence to support the score.

Defendant received ten points for ov 9. Offense variable 9 is to be scored at ten points where the defendant is the leader in a multiple-offender situation. The instructions state that the entire criminal episode should be taken into account in determining whether the offender is a leader. See Guidelines, *supra* at 45. In this case, testimony at trial revealed that it was defendant who did most of the talking during the episode and that it was defendant who escorted the female victim through-

out the house in search of valuables. Moreover, defendant was the only one involved in the criminal sexual conduct violations. Given these facts, we are persuaded that there was sufficient record evidence to support the score.

Defendant was given five points for ov 7 (exploitation of the victim's vulnerability) and five points for ov 13 (psychological injury). While we agree with defendant that the court may have abused its discretion in assessing these scores in the absence of supporting evidence, reduction of the score would not alter the total offense variable score so as to change the level at which defendant was ultimately placed in calculating the guidelines' range. Accordingly, any error in this regard is harmless. *People v Ratkov (After Remand),* 201 Mich App 123, 127; 505 NW2d 886 (1993).

Finally, defendant's contention that his sentences for armed robbery and criminal sexual conduct violate the principle of proportionality under *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), is without merit. The armed robbery sentences are within the guidelines and are presumed proportionate. *People v Williams (After Remand),* 198 Mich App 537, 543; 499 NW2d 404 (1993). Defendant has failed to persuade us that the presumption does not apply in this instance.

As for the sentences for criminal sexual conduct, defendant was convicted of first-degree criminal sexual conduct and the scores placed him in the c-iv cell. See Guidelines, *supra* at 47. Thus, the guidelines' range was 180 to 360 months or life. The prosecution concedes that the sentence of 60 to 120 years exceeds the guidelines, presumably because the term-of-years sentence falls outside the 180- to 360-month range as specified in the guidelines. In interpreting the guidelines, we are obligated to ascertain the drafters' intent through

the application of principles of statutory construction. *People v Berry,* 198 Mich App 723, 724; 499 NW2d 458 (1993). One such principle is that in interpreting the provision, terms should not be rendered meaningless. *Jenkins v Great Lakes Steel Corp,* 200 Mich App 202, 208; 503 NW2d 668 (1993).

In this case, we are persuaded that the drafters intended to allow a term of years between 180 and 360 months or life imprisonment with parole. To conclude that the guidelines permit a sentence of *any* term of years less than life would render the specific recommended guidelines' range meaningless. Thus, any term-of-years sentence whose minimum exceeds the 360-month limitation is considered to be outside the guidelines. Inasmuch as defendant received a sentence of 60 to 120 years, his minimum sentence exceeds the guidelines' recommended minimum sentence by two times.[7]

In this matter, however, the court articulated specific reasons for the departure. The court stated that the horrendous nature of the circumstances surrounding the incident in question, coupled with defendant's complete disregard for human life and dignity justified a departure from the guidelines. In this case, defendant repeatedly attempted to penetrate the victim in the course of the offense. Moreover, some four days later, defendant and his codefendant broke into another home and killed the owner. Defendant's offense-variable score was more than double what it needed to be to place him in the c-iv cell of the criminal sexual conduct grid. Having reviewed the circumstances of the offense and subsequent criminal conduct of this

---

[7] Defendant was twenty-two years old at the time he was sentenced and he does not argue that his sentence violates *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989). Nonetheless, defendant can reasonably be expected to serve the minimum sentence. See *People v Weaver (After Remand),* 192 Mich App 231; 480 NW2d 607 (1991).

offender, we are persuaded that the sentence was proportionate. The court did not abuse its sentencing discretion in this case.

Affirmed.