# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

WILLIAM CALVIN HUNT,

      Defendant-Appellant.

UNPUBLISHED
November 8, 2018

No. 338980
Oakland Circuit Court
LC No. 2017-261956-FH

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree retail fraud, MCL 750.356c(2), for stealing a backpack and several bottles of liquor from a Southfield Meijer. Defendant challenges the evidentiary support for his conviction, the propriety and sufficiency of the identification evidence, the prosecutor's conduct, and defense counsel's effectiveness. None of these challenges have merit and we affirm.

## I. BACKGROUND

As noted, defendant was convicted of stealing a backpack full of liquor from a Meijer store. Three store security officers—James Lewandowski, Maya Brunson, and Elliott Thomas—observed defendant acting suspiciously on video surveillance, leading them to enter the sales floor to follow defendant. They witnessed defendant push his cart to a department with more cover and place several liquor bottles into a backpack. Defendant then left the store with the backpack through an unsecured opening used by employees to return shopping carts to the building. The security officers caught up to defendant in the parking lot. He refused their command to return to the store and instead dropped the backpack and ran across Telegraph Road. After running through several parking lots and turning his shirt inside out, the police detained defendant at a nearby restaurant within an hour of the theft. The security officers came to the scene of the arrest and identified defendant as their shoplifter.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that the jury's verdict was against the great weight of the evidence. Specifically, defendant contends that the prosecutor cannot establish that defendant concealed the liquor bottles in the backpack because he provided no footage from Meijer's video surveillance system of this act. Defendant also cites inconsistencies in the three security

-1-

officers' initial description of the suspected shoplifter. Because defendant did not raise this issue in a motion for a new trial, our review is limited to plain error affecting defendant's substantial rights. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011).

A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Vacation of the jury verdict is warranted "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. When considering whether a jury's verdict is against the great weight of the evidence, we may not interfere with the jury's resolution of conflicting testimony and assessment of witness credibility. *Id*. at 469-470.

The prosecutor was not required to present video evidence to support the eye witness testimony. Lewandowski testified that due to ongoing store renovations, many security cameras were not functional at the time of the offense. No working camera captured defendant actually placing the liquor bottles in the backpack. However, both Lewandowski and Brunson personally observed defendant hiding the liquor bottles. Moreover, the security officers observed defendant leave the store with the backpack without paying for it or its contents. Defendant avoided the store's security system by exiting through an opening not meant for human egress. Once confronted in the parking lot, defendant dropped the backpack holding the contraband liquor. The security officers took the backpack into evidence and took photographs of its contents. The jury accepted this evidence and credited the security officers' testimony that an offense occurred. We may not interfere with that judgment.

Defendant also makes much of minor inconsistencies in the security officers' initial descriptions of the shoplifter and other testimony. The security officers could not agree whether defendant was wearing blue jeans or blue or black athletic pants. The security officers presented conflicting testimony about whether they observed defendant on video surveillance for 30 seconds, one minute, or two minutes. The distance at which the officers trailed behind defendant as he exited to the parking lot also varied. The security officers' testimonies were largely consistent, however, accurately describing defendant's physical appearance, that he was wearing a Detroit Lions baseball cap, and that he was missing teeth. They also consistently described defendant's movements through the store. In any event, all three witnesses confronted defendant in the parking lot where he was caught red-handed with the stolen items and observed him face-to-face, allowing them to positively identify him. Accordingly, the record evidence did not preponderate against the jury's verdict.

## III. IDENTIFICATION ISSUES

In a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises several challenges to his identification as the perpetrator in this case. Defendant first challenges the trial court's denial of his pretrial motion for an evidentiary hearing pursuant to *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), and to exclude Lewandowski's identification testimony from trial. We review for an abuse of discretion a trial court's decision whether to conduct a *Wade* hearing. *People v Baker*, 103 Mich App 255, 258; 303 NW2d 14 (1981). We review for clear error the trial court's

ultimate decision whether to admit the identification evidence. *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004).

The trial court did not abuse its discretion in denying defendant's request to hold an evidentiary hearing. "[W]here it is apparent to the court that the challenges are insufficient to raise a constitutional infirmity, or where the defendant fails to substantiate the allegations of infirmity with factual support, no hearing is required." *People v Johnson*, 202 Mich App 281, 285; 508 NW2d 509 (1993). A defendant is not "entitled to an evidentiary hearing where the defendant fails to [factually] support the allegation of impropriety . . . or where it is clear from the record that such a hearing would be futile in light of substantial evidence that there exists an independent basis for the identification." *Id*. at 287.

Defendant failed to meet his burden of showing that an evidentiary hearing was necessary. First, defendant did not claim that his constitutional rights were impacted by the identification procedures in this case. Instead, he challenged the accuracy and reliability of Lewandowski's initial description of the suspect, which he contends impacted the subsequent identifications made by Lewandowski. Due process does not require a separate hearing to evaluate the reliability of identification evidence; reliability should be assessed by the jury at trial. *Johnson*, 202 Mich App at 285-286. Second, any hearing would have been futile because the record clearly established an independent basis for Lewandowski's identification of defendant.

"The independent basis inquiry is a factual one" and an "in-court identification must be viewed in light of the 'totality of the circumstances.' " *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998). Courts should consider eight factors when determining whether a witness had an independent basis for his or her identification of a defendant:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor[s] affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification. . . .

4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. . . . [T]he nature of the alleged offense and the physical and psychological state of the victim. . . .

8. Any idiosyncratic or special features of defendant. [*People v Kachar*, 400 Mich 78, 95-96; 252 NW2d 807 (1977).]

If an initial identification was tentative, it is possible that subsequent, more certain identifications resulted from impermissibly suggestive law enforcement procedures. *Gray*, 457 Mich at 112.

There is no record indication that Lewandowski's initial identification of defendant was tentative. In fact, despite slight changes in his description of defendant's clothing, Lewandowski identified defendant as the suspect. Lewandowski's preliminary examination testimony established that he had extensive training and experience in conducting surveillance. Lewandowski observed the suspect for approximately 25 minutes as the suspect moved about the store. He also confronted the suspect face-to-face and up close in the parking lot. Lewandowski recognized the suspect as a suspicious individual who had been in the store two days earlier. His description of the suspect as wearing a black t-shirt over a white t-shirt, with dark blue or black jogging pants and a Detroit Lions baseball cap was consistent with defendant's actual clothing when he was apprehended by the police nearby and shortly after the offense.

Defendant focuses on Lewandowski's omission from his initial description to the police and in his testimony at the preliminary examination that the suspect, like defendant, was missing some teeth. However, that information was included in Lewandowski's contemporaneous incident report. The on-the-scene identification was conducted less than an hour after the incident, and Lewandowski was positive that defendant was the Meijer shoplifter. Lewandowski was again positive when he identified defendant at a lineup and at the preliminary examination. The trial court did not err in ruling that the totality of the circumstances clearly showed that Lewandowski had an independent basis for identifying defendant. Ultimately, the credibility of Lewandowski's identification testimony was a jury question, and is not something a trial court is required to determine at a separate evidentiary hearing. *Johnson*, 202 Mich App at 285-286. Accordingly, no suppression hearing was required and Lewandowski's identification testimony was properly admitted.

Defendant next challenges the on-the-scene identification procedure used by the police. Defendant is not concerned that the Meijer employees identified him as he sat in the back of a police cruiser outside a restaurant near the store. Rather, defendant complains that the police selected him as their suspect based on "vague" descriptions that did not mention the condition of his teeth. Defendant insists that "there was no sense of [u]rgency" to conduct an on-the-scene identification as the officers discovered an outstanding warrant for his arrest and so could transport him to the police station regardless of whether he committed the current offense, and then conduct a stationhouse lineup. As to the actual procedure, defendant contends that the police improperly allowed the three security officers to stand together and be swayed by each other's identifications and told the witnesses that defendant was going to jail in any event based on an outstanding warrant. Because defendant did not challenge the propriety of the on-the-scene procedure in the trial court, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Prompt "on-the-scene confrontations are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance." *People v Winters*, 225 Mich App 718, 728; 571 NW2d 764 (1997). On-the-scene identifications allow witnesses to act when their memories are fresh. *People v Libbett*, 251 Mich App 353, 362; 650 NW2d 407 (2002). Defendant's contention that an on-the-scene identification was unnecessary is therefore unfounded.

A defendant may challenge an on-the-scene identification if the procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [it amounts] to a denial of due process." *Winters*, 225 Mich App at 725. The fairness or suggestiveness of an identification procedure is evaluated in light of the totality of the circumstances. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). Relevant to this consideration are: (1) "the opportunity for the witness to view the [suspect] at the time of the crime"; (2) "the witness'[s] degree of attention"; (3) the accuracy of any prior descriptions by the witness; (4) the witness's level of certainty during the identification; and (5) "the length of time between the crime and the confrontation." *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998).

The on-the-scene identification occurred less than an hour after the charged offense. The security officers observed defendant for an extended period, including giving the suspect their undivided attention as they stood face-to-face in the parking lot. Although defendant contends that the police were simply looking for a black male, this is an over-simplification of events. The security officers described the suspect's estimated height and weight to the police, gave a general description of his attire, and pointed the police in the direction of the suspect's escape. The police met an employee at a nearby car dealership who encountered the suspect as he fled and guided the police along the trail.[1] The police took defendant into custody based on information that narrowed down their search and not because he was in the wrong place at the wrong time. Moreover, we note that the record does not support defendant's claim that the police told the Meijer security officers that defendant was being arrested in any event on an outstanding warrant. We discern no ground to invalidate this identification procedure.

## IV. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor impermissibly vouched for the credibility of a state witness, Lewandowski. Specifically, during cross-examination, defense counsel used Lewandowski's incident report to refresh the witness's memory about his initial description of the suspect. In a section addressing the suspect's physical description, Lewandowski did not mention that the suspect was missing teeth. The prosecutor requested that the entire report be shown to Lewandowski, however, not just the page upon which defense counsel relied. And in a

---

[1] Defendant argues that the police should have brought this citizen to the scene of his arrest to make an identification. However, this individual did not see the offense and could not establish defendant's identity as the shoplifter at Meijer.

section regarding the suspect's identifying features, Lewandowski included that the suspect was missing teeth.

The prosecutor's request that the entire report be shown to the witness was completely proper. MRE 613(a) provides that when a witness is examined concerning a prior statement, the statement, on request, "shall be shown or disclosed to . . . the witness." It was appropriate for the prosecutor to ask that Lewandowski be allowed to review the entire incident report, so that the jury would not be misled into believing that Lewandowski never mentioned in the report that the suspect was missing teeth. The prosecutor did not vouch for Lewandowski's credibility or the veracity of the report merely by requesting that the entire report be shown to the witness.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, in an extremely unclear argument, defendant contends that his trial counsel was ineffective. Defendant complains that his attorney did not object to the presentation of Lewandowski's entire report. Of course, as the court rules required presentation of the entire report upon request, defense counsel had no ground to object. An attorney is not ineffective for failing to raise futile objections. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

However, defendant contends that the description of a suspect missing several teeth was not a description of the suspect followed on the day in question, and instead this was a description of the individual Lewandowski had observed two days earlier in the store. Defendant contended that the suspect on the day in question was not the same individual who Lewandowski found suspicious on the prior occasion. There is nothing in the record to support this claim. The jury was not advised of any prior incidents involving defendant. Although defendant now suggests that his counsel should have developed a convoluted theory of misidentification based on prior encounters, defendant has not overcome the presumption that counsel's decision to refrain from presenting highly prejudicial information against defendant in an attempt to secure defendant's acquittal was reasonable trial strategy. See *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991) (a defendant must overcome the presumption that the challenged action might be considered sound trial strategy).

Defendant also contends that counsel was ineffective for not eliciting from Lewandowski at trial that he testified at the preliminary examination that he had copied all portions of the surveillance recordings, but did not produce any surveillance recordings at trial that actually showed defendant committing the charged offense. The record discloses that a DVD of the store's surveillance video recordings was played at trial. Lewandowski testified that not all of defendant's activity was captured on video. Defense counsel thoroughly questioned Lewandowski about what was observed in the video recordings and established that there were no recordings showing defendant actually concealing the bottles of liquor in the backpack. The prosecution instead relied on the witnesses' observations to establish defendant's illegal activity. During closing argument, defense counsel highlighted that the only photographic evidence of

defendant showed him engaged in "lawful shopping," and argued to the jury that the absence of any video evidence showing defendant committing illegal activity "should bother you." Defense counsel thereby raised the very argument urged by defendant on appeal.

We affirm.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher